MORGAN UTILITIES, INC., *v.* PERRY COUNTY.

Opinion delivered March 30, 1931.

*Buzbee, Pugh & Harrison,* for appellant.
*Dean, Moore & Brazil,* for appellee.

BUTLER, J. This suit was instituted by the appellee, Perry County, in the chancery court of said county. The complaint alleged that S. R. Morgan, G. B. Colvin, and certain others, were indebted to it by reason of a judgment which it had previously recovered in the circuit

court of said county, and that it had exhausted its remedies at law to enforce the same without effect, the executions issued from said court and directed to the sheriffs of Perry and Pulaski counties having been returned *nulla bona;* that, although the said sheriffs had failed to discover any assets of S. R. Morgan upon which levy might be made, he was in fact the owner of valuable properties, and that he and the defendants, M. B. Morgan, Morgan Utilities, Inc., and other defendants named in the complaint, had conspired together to conceal the assets of the said S. R. Morgan by the incorporation of the defendant Morgan Utilities, Inc., together with a number of other corporations, the capital stock of which was issued to various persons, and that the assets belonging to S. R. Morgan were held by the said corporations and M. B. Morgan; that M. B. Morgan and the defendant, Morgan Utilities, Inc., and other named corporations and individuals all of whom were made parties defendant with S. R. Morgan were merely the employees and creatures of S. R. Morgan and the assets held in their names were in fact the property of S. R. Morgan, and on information charged that in reality title to all of the assets was then in the name of S. R. Morgan by deeds and assignments in his possession, but which he, with the aid of the other named defendants, fraudulently concealed, so that the title appeared to be in M. B. Morgan and the other named defendants. The prayer of the complaint was for an injunction restraining S. R. Morgan and his codefendants from disposing of their properties and for production before a master to be appointed by the court of all books and other records belonging to the defendants to be used in the examination of witnesses produced by plaintiff before said master, and for a discovery by S. R. Morgan and his codefendants of conveyances and other transfers unrecorded and in his possession, conveying to him and to other persons for his use the properties held in the name of the various named defendants, and to require the said defendants to disclose what conveyances that may have been executed in

favor of S. R. Morgan or others for his use, and upon final hearing that the court find and declare the rights of defendants and each of them in regard to the properties and assets in the hands of the various defendants to the end that such properties as are in fact assets of the said S. R. Morgan be used in liquidation of plaintiff's judgment under such orders as the court might deem proper.

Summons was duly issued and served on G. B. Colvin, a resident of Perry County, and upon the defendants, S. R. Morgan, M. B. Morgan, Morgan Utilities, Inc., and the other named defendants in Pulaski County of which county they were, and are, residents. Thereafter, M. B. Morgan and Morgan Utilities, Inc., appeared specially and moved to quash service of summons because suit was brought in Perry County and service was had on them in Pulaski County, and for the further reason that there was no joint liability of G. B. Colvin and them in the suit instituted. This motion was overruled over the objection and exception of M. B. Morgan and Morgan Utilities, Inc. There was no other plea filed by these or any of the other defendants. The court rendered a decree reciting that the case was submitted upon the complaint of plaintiff and the amendment filed thereto, the return of the sheriff showing service of process upon the several defendants, and oral testimony adduced before the court which, among other things, found that "all assets and properties of every kind and description purporting to be that of the defendants S. R. Morgan & Co., Morgan Utilities, Inc., and M. B. Morgan are in fact the property of the defendant S. R. Morgan and the stock in defendant corporations or a material part thereof is carried in the name of M. B. Morgan and others for the purpose of concealing the assets of S. R. Morgan and for the purpose of defrauding plaintiff and to defeat the collection of its judgment debt." The decree, after appointing a receiver to take charge of the assets upon his giving certain bond to be approved by the clerk of Perry County, concludes as follows: "It is further

considered, ordered and adjudged that any and all properties and assets of every kind and description of said defendants, S. R. Morgan & Co., Morgan Utilities, Inc., Middle-South Utilities Co., and M. B. Morgan are in reality the assets and properties of the defendant S. R. Morgan, and as such assets and properties are hereby declared to be subject to execution or other process of law for plaintiff's judgment, and the clerk of this court is hereby directed to issue execution against said properties upon application of plaintiff for the sale of same or so much thereof as is necessary to satisfy plaintiff's judgment, together with the costs of this action, in the way and manner now prescribed by law.''

From this decree the appellant sought and was granted an appeal to this court and here insists, first, that the motion to quash should have been sustained, second, that the court acquired no jurisdiction of appellant, and third, that the complaint is not sufficient to constitute a cause of action against the appellant. The appellee has filed a motion to dismiss the appeal for failure to comply with rule 9 of this court. We have examined the transcript in connection with the abstract filed by the appellants and find that the same is sufficiently comprehensive to enable us to understand the issues involved and therefore that the appellee's motion is without merit. We will first consider the last ground urged by the appellants for reversal.

■ It is clear that the intention of the pleader was to state a cause of action for discovery under § 4366 of Crawford & Moses' Digest. It contains a distinct statement of the nature of the claim sought to be enforced and alleged that it had exhausted its remedies at law to enforce the same and that the assets of S. R. Morgan were fraudulently concealed in the name of the appellants for the purpose of hindering the appellee in the collection of its debt, the prayer being for a discovery of the assets and that they be subjected, or so much thereof as necessary, to the payment of appellee's judgment. This constituted a cause of action under the section *supra*. *Robinson* v. *Citizens' Bank*, 135 Ark. 308, 204 S. W. 615.

2. The first and second grounds urged for reversal will be considered together and are the main questions in the case. Sections 84-95, both inclusive, of the Civil Code, now §§ 1164-1174, both inclusive, of Crawford & Moses' Digest and § 484 of the Civil Code, now § 1175 of the Digest, make provision for the venue in certain named actions; and § 1176 of the Digest provides that "every other action may be brought in the county in which the defendant, or one of several defendants, resides or is summoned." All of the actions in these sections refer to ordinary adversary suits by which some primary right of the plaintiff is to be ascertained or liability of the defendant declared. This is not, however, the purpose of § 4366, for there no primary right on the one hand or liability on the other is the end to be gained, but merely a remedy ancillary to, and in aid of, the right already established and the liability found evidenced by the judgment previously obtained. *Honore* v. *Colmesnil,* 4 Dana (Ky.) 291; *McDormant* v. *Lou. Cinn. Ry. Co.,* 11 Bush. (Ky.) 386; *Parks* v. *Jellicoe,* 136 Ky. 622, 124 S. W. 868. Hence the sections relating to the venue of actions above named have no application to the action at bar.

From the allegations of the complaint in the instant case and the relief therein prayed, it is clear, as maintained by the appellee, that the proceeding is brought under the provisions of § 4366, *supra.* This section was lifted out of the Civil Code of 1854 of the State of Kentucky and was § 474 of that Code. That section, as §4366 of the Digest, provides:

"After an execution of *fieri facias,* directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an action, by equitable proceedings, in the court from which the execution issued, or in the court of any county in which the defendant resides or is summoned, for the discovery of

any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions persons indebted to the defendant in the execution, or holding the money or property in which he has an interest, or holding the evidences or securities for the same, may be also made defendants."

It is the contention of the appellant that under the facts in the instant case this statute does not govern, for the reason that this suit was brought in the chancery court of Perry County, whereas the judgment sought to be enforced by it and the execution issued thereon were rendered and issued out of the circuit court of Perry County, and that, as appellants were not residents of, or summoned in, Perry County, the court acquired no jurisdiction. If the phrase, "in the court from which the execution issued," is to be considered as standing alone and literally interpreted, there would be much force in the view taken by the appellant. But such is not the correct rule of construction. The entire section, as related to other sections of the Code of which it is a part, must be considered as a whole, and, as thus interpreted, take into consideration the nature and constitution of the court with which the statute deals. When this section is thus considered, and as construed by the court of the State from which it was taken, which decisions are binding on us, it is clear that the court referred to is the circuit court as then constituted both in Kentucky and in Arkansas. It was a court of dual jurisdiction, the judge presiding in one division or "on the law side" as a judge of a superior court of common law, and also sitting in chancery as judge of a court of equity, maintaining two dockets and records, the one for actions at law and the other for suits in chancery: in reality, two courts of separate and independent jurisdiction presided over by the same judge. It is not to be doubted that, as constituted at the time of the adoption of the Code, of which, as we have seen, § 4366, *supra,* is a part, where a judg-

ment at law had been obtained and execution thereon issued from the law side, to maintain the action contemplated by the statute, the proceedings must have been instituted in chancery, for it was provided: "The plaintiff in execution may institute an action by *equitable proceedings*," which is in the nature of a creditor's bill "for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled." Therefore, the provision that the action might be brought "in the court from which the execution issued" could not be taken in its literal sense and meant, and could only mean, that branch of the court having equity jurisdiction, to-wit, the chancery court whose presiding officer was the same individual sitting in chancery as the one presiding in the superior common-law court. To interpret the statute any other way would be to render it impotent. *Honore* v. *Colmesnil, supra; McDormant* v. *Sou. Cin. Ry. Co., supra; Jones* v. *Jeffress*, 11 Bush. (Ky.) 636; *Parks* v. *Jellicoe, supra; Robinson* v. *Citizens' Bank, supra; N. M. Uri & Co.* v. *McCroskey*, 135 Ark. 537, 205 S. W. 976.

The circuit court of Perry County continued with its dual jurisdiction until 1903 when, by act No. 166 of the General Assembly then in session, the jurisdiction was divided by the creation of a separate court of chancery. It is therefore argued that, because of this, "whatever may have been the rule with respect to legal and transitory actions prior to legislative changes, there can be no question now that an action like the one in the case at bar is of a transitory nature," and that "if the judgment creditor should seek to bring an independent action against the execution defendant in some other court of competent jurisdiction, to enforce any remedies he may have against the execution of the defendant he cannot proceed against him unless the execution defendant voluntarily submits himself to the jurisdiction of the court in which the action is commenced or is brought into court by proper process. If the action is transitory in nature, it must appear that he has been

properly summoned in the county in which the action is brought." What we have already said suggests the answer to this contention: First, that this is not an ordinary adversary suit, but an action by equitable proceeding in aid of the enforcement of a right already adjudicated and found to exist; and, second, that the legislative change in no wise affected the constitution of the court or its jurisdiction except as to its presiding officer. So, it is obvious that whatever powers the circuit court on its chancery side had under § 4366, *supra*, that authority has devolved on the chancery court as now constituted, and to carry out the purposes of the statute it must be considered as a component part of the court from which the execution issued, for thus it was when the statute was enacted and no legislation since that time has indicated any disposition on the part of the Legislature to alter the force and effect of that law.

This court, in *Robinson* v. *Citizens' Bank, supra,* has recognized the present validity of § 4366 of Crawford & Moses' Digest, then § 3308 of Kirby's Digest. In that case Robinson, having obtained judgment in the circuit court of Johnson County against one Stewart, instituted an action in the chancery court of that county against Stewart and appellee Citizens' Bank, a domestic corporation with its domicile in Madison County in which county it was served with process, to cancel a mortgage executed by Stewart to the appellant on lands owned by Stewart in Johnson County. He alleged that the Citizens' Bank, which was made a party defendant, held a mortgage on the lands of Stewart which had been paid, but that the bank was still holding the security to prevent the plaintiff from collecting his judgment, and prayed for cancellation as an impediment against the subjection of the real estate described therein to the satisfaction of appellant's judgment. The court held that the allegations of the complaint set forth an action for discovery of the property to be subjected to the mortgagor, and that it was properly brought and a decree correctly entered in conformity with the prayer.

So also in the case of *N. M. Uri & Co.* v. *McCroskey, supra,* the court recognized this statute, saying: "It is true, under § 3308 of Kirby's Digest that a judgment creditor may establish a lien upon the property of an apparently insolvent judgment debtor in the hands of a third party by instituting equitable proceedings to subject the property to the payment of his claim, which lien shall exist from the service of the summons."

It is our conclusion, therefore, that the chancery court of Perry County had jurisdiction, that it properly overruled the defendant's motion to quash, and that its decree should be affirmed. It is so ordered.

Mr. Justice KIRBY dissents.